IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 SEP -1 PM 5:10

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| LECTROLARM CUSTOM SERVICES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 03-2330 Ma/A |
| VICON INDUSTRIES, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT VICON INDUSTRIES, INC.'S MOTION TO STAY**

Before the court is defendant Vicon Industries, Inc.'s ("Vicon") "Motion to Stay Action Pending Patent Reexamination," filed on behalf of all defendants (the "Defendants") on March 4, 2005. Plaintiff Lectrolarm Custom Systems, Inc. ("Lectrolarm") filed a response on March 22, 2005. Vicon filed a reply brief on April 18, 2005, in which it also requested an oral hearing on the motion. For the following reasons, Vicon's motion to Stay is DENIED and its request for an oral hearing is DENIED.

**I. Factual Background**

On November 27, 1990, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 4,974,088 (the "'088 Patent"), entitled Remote Control Apparatus for a Rotating Television Camera Base, to inventor Takeshi Sasaki. The technology

This document entered on the docket sheet in compliance
with Rule 55 and/or 79(a) FRCP on ___9-7-05___

at issue is an apparatus that uses computer memory and digital communication to permit remote control "rotation of a monitoring television camera in the horizontal and vertical directions." U.S. Patent No. 4,974,088, Column 1:6-8. The patent was originally assigned to Maruwa Electronic & Chemical Company. ("Maruwa"). Maruwa assigned the patent to Lectrolarm. Lectrolarm alleges that the defendants have infringed the '088 patent.[1]

On January 28, 2005, Vicon filed in the United States Patent and Trademark Office (the "PTO") a request for reexamination of the '088 Patent. (Def.'s Mem. at 1.) The request for reexamination is based on prior art consisting of printed publications for two products: the VPS1200 system made by Vicon and the SensorVision product made by Sensormatic Electronics Corporation ("Sensormatic"). (Id. at 4.) This prior art was not considered by the PTO when it granted the '088 Patent, although both products, and presumably the publications describing them, have been available for over 15 years. (Pl.'s Resp. at 3.) The prior art products described in these publications are also the subject of two summary judgment motions for invalidity that were filed in this case on September 24, 2004, and November 19, 2004. Both Vicon and Sensormatic contended in letters to Lectrolarm in 2000 that these publications are invalidating prior art. (Id. at 4 (citing letters between the parties' attorneys).)

---

[1] Originally there were fourteen defendants; four remain.

The PTO granted Vicon's request for reexamination of the '088 Patent. (Def.'s Reply Brief.) The PTO found "a substantial likelihood that a reasonable examiner would consider the teachings of the newly cited prior art important in deciding whether or not the claims are patentable." (Laurenzi Dec., Ex. A at 2.)

The complaint in this case was filed on May 8, 2003. A trial date of September 19, 2005, was set on November 30, 2004. Discovery concerning expert witnesses closed on May 6, 2005, and fact discovery closed on January 17, 2005. Lectrolarm estimates that over $10 million has been spent by the defendants litigating this suit so far. (Pl.'s Resp. at 5.)

## II. Patent Reexamination Background

"Any person at any time may file a request for reexamination by the [Patent] Office of any claim of a patent. . . ." 35 U.S.C. § 302. A reexamination request may only be based on "prior art consisting of patents or printed publications." 35 U.S.C. § 301. "Within three months following the filing of a request for reexamination . . . the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." 35 U.S.C. § 303(a). "If . . . a substantial new question of patentability affecting any claim of a patent is raised, the determination will include an order for reexamination of the patent. . . . The patent owner will be given . . . not less than two months . . . within which he may

file a statement on such question. . . . [The person who requested reexamination then has two months to] file and have considered in the reexamination a reply to any statement filed by the patent owner." 35 U.S.C. § 304.

If, however, litigation has been stayed for the filing of a reexamination request, the examination following the statement by the patent owner and the reply by the requester "will be expedited to the extent possible."[2] M.P.E.P. § 2286. Office actions in these reexamination proceedings will normally set a shorter one-month statutory period for response rather than the two months usually set in reexamination proceedings. Id.

"After the times for filing the statement and reply . . . have expired, reexamination will be conducted according to the procedures established for initial examination. . . ." 35 U.S.C.A. § 305. The patent owner may appeal . . . and may seek court review . . . [of] any decision adverse to the patentability of any original or proposed amended or new claim of the patent [as provided by the patent statute for appeal and court review of initial patent examination proceedings]." 35 U.S.C. § 306. "All reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special

---

[2] The M.P.E.P. regulations actually state that the reexamination proceedings will be expedited if the request for reexamination indicates that litigation has been stayed. The court assumes that if the PTO is informed that litigation has been stayed after the request for reexamination was filed the examiner will adopt the expedited time table.

4

dispatch within the Office." 35 U.S.C. § 305. "[W]hen the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a).

"Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988). Reexamination permits "efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation" and allows the validity of a patent to be "tested in the Patent office where the most expert opinions exist." H.Rep. 1307(I), 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Admin. News 6460, 6463.

### III. Analysis

The decision to stay a case pending the conclusion of a patent reexamination is at the discretion of the trial court. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). Courts have found that issuing a stay pending the outcome of a reexamination has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

See, e.g., Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc., 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003). Thus, reexamination by the Patent Office, "if available and practical, should be deferred to by the courts, especially where the infringement litigation is in the early stages." Gonnocci, 68 U.S.P.Q.2d at 1757; see also Softview Computer Prods. Corp. v. Haworth, Inc., 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000). But, "[p]arties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." Softview, 56 U.S.P.Q.2d at 1635.

"In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a

6

clear tactical disadvantage to the non-moving party;[3] (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3Com Corp., 69 F.Supp.2d 404, 406-07 (W.D.N.Y. 1999); see also Target Therapeutics, Inc. v. SciMed Life Systems, Inc., 1995 WL 20470 (N.D. Cal. 1995); GPAC, Inc. v. DWW Enterprises, Inc., 144 F.R.D. 60, 66 (D.N.J. 1992); United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D. Del. 1991).

The Defendants argue that a stay should be granted based on the second factor: whether a stay will simplify the issues in question and trial of the case. Granting the Defendants' motion could simplify the issues before the court because the PTO could invalidate all the claims. The parties have presented data showing that slightly more than 10% of completed reexaminations requested by a third party result in cancellation of all claims at issue. (Def.'s Mem., Ex. H (Ex Parte Reexamination Filing Data-March 31, 2004).) The data also shows that 30% of completed reexaminations requested by third parties result in confirmation of all claims.

---

[3] The court does not address this factor in the body of the opinion because it is inconclusive. The Defendants argue convincingly that Lectrolarm seeks only money damages so Lectrolarm would not be prejudiced if the trial were delayed. Lectrolarm argues, also convincingly, that because discovery is essentially complete, and the average time for a reexamination is roughly one and a half years, staying the case would require expensive discovery to account for factual developments that occurred during the reexamination. To the extent that this factor weighs in either party's favor it is in Lectrolarm's. Because the court finds that the Defendants delayed requesting reexamination and could have prevented any prejudice to Lectrolarm by requesting reexamination in a more timely fashion, any prejudice to Lectrolarm should be avoided.

7

(Id.) In slightly fewer than 60% of these types of reexaminations the claims are modified in some way, but not all claims are cancelled. Based on this data, there is roughly a 70% chance that granting a stay will prevent the court from having to consider the effect modifications made by the PTO may have on the court's orders.[4]

The facts of this case, however, suggest that it is unlikely that the PTO will rule in the Defendants' favor because the request for reexamination appears to be motivated more by a desire for tactical delay than a belief that the prior art cited in the reexamination request is invalidating. If the Defendants had truly believed that this prior art invalidates some or all of the '088 Patent's claims, it seems likely that the Defendants would have requested reexamination one and a half years ago, before spending millions of dollars on litigation. Further, reexamination only deals with invalidity from printed prior art. Unless all claims were invalidated, a result that has a one-in-ten probability, this court would still need to deal with issues concerning other types of prior art, liability, and damages.

Analysis of the third factor, whether discovery is complete and whether a trial date has been set, points towards denying

---

[4] Even if no changes to the claim language result, the issues before the court would be simplified because the PTO's assessment of the prior art in the reexamination request would prevent the court from having to decide parts of the two summary judgment motions based on that prior art. The court, however, would still need to consider the sale or offer-for-sale portions of those motions.

8

Vicon's motion to stay. At the time the request for reexamination was filed, on January 28, 2005, a trial date of September 19, 2005, had been set on November 30, 2004, and fact discovery had closed on January 17, 2005.[5] Thus, Vicon's request for reexamination was filed at the close of fact discovery, over a year and a half after the complaint in this case had been filed and two months after a trial date had been set.

When a petition for reexamination is filed after a trial date has been set, extensive discovery has been conducted, and the reexamination does not involve newly discovered prior art, courts uniformly refuse to stay the case pending reexamination. See, e.g., Xerox, 69 F.Supp.2d 404 (refusing to grant a stay where a request for reexamination was filed one and a half years into a lawsuit, six months before discovery was to close, and there was evidence that the defendant had known of the allegedly invalidating prior art eight months before filing the request); Galdish v. Tyco Toys, Inc., 1993 WL 625509 (E.D. Cal. Sept. 15, 1993) (refusing to grant a stay where there was evidence that the party requesting reexamination had known about the prior art in question for six months before filing the reexamination request); Remington Arms Co., Inc. v. Modern Muzzleloading, Inc., 1998 WL 1037920 (M.D.N.C.

---

[5] The September 19, 2005, trial date will need to be reset. This fact, however, has no bearing on the court's analysis of the third factor considered in deciding whether to stay litigation pending reexamination because the court's main concern is whether the reexamination process is being abused. See Softview, 56 U.S.P.Q.2d at 1635. Thus, the relevant trial date is the date set when the reexamination request was filed, not the date the trial actually occurs.

9

Dec. 17, 1998) (finding that the "most compelling reason for denying the stay" was the "unjustified delay" in requesting reexamination more than three months after learning of the allegedly invalidating prior art). Output Technology Corp. v. Dataproducts Corp., 22 U.S.P.Q.2d 1072 (W.D. Wash. 1991)(denying a motion to stay pending reexamination when discovery was scheduled for completion in four months and trial was scheduled in less than nine months); Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 1994 WL 121673, at *3 (S.D.N.Y. Apr. 6, 1994) ("in a case such as this, in which multiple opinions have been issued, discovery is well under way and no prejudice to either party is likely to ensue, there is simply no justification for further delay in the action").

The Defendants cite a number of cases for the proposition that stays for reexamination are routinely granted by trial courts after extensive litigation has already occurred. All cases that the defendants cite in support of this proposition, however, are readily distinguishable. In Gonnocci, 68 U.S.P.Q.2d 1755, the court granted a stay after extensive discovery had been conducted and a trial date had been set. The court, however, explicitly stated that it could not find that the party seeking reexamination had delayed because nothing in the record indicated when that party had become aware of the allegedly invalidating prior art. Id. at 1758. In this case it is undisputed that the Defendants were aware of the prior art cited in their request for reexamination and its relevance to

Lectrolarm's claim of infringement at least five years before they filed their request. Similarly, the court's decision to grant a stay one month before trial in Robert H. Harris Co., Inc. v. Metal Mfg. Co., Inc., 19 U.S.P.Q.2d 1786 (E.D. Ark. 1991), can be distinguished because the court found that the parties had not participated in protracted or expensive discovery and the prior art cited in the reexamination request was "recently discovered." Id. at 1788-89. Likewise, in Grayling Industries, Inc. v. GPAC, Inc., 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991), "the prior art on which the petition [for reexamination was] based was uncovered during discovery." Id. at 1874. Finally, Middleton, Inc. v. Minnesota Mining and Mfg. Co., 2004 WL 1968669 (S.D. Iowa Aug. 24, 2004), is distinguishable because the court's grant of a stay after 8 years of litigation was motivated by the fact that the validity of the patent that was the subject of the reexamination had only recently become an issue in the case.[6]

Finally, and most significantly, granting Vicon's motion to stay would impermissibly permit Vicon to abuse the reexamination process. The Defendants were aware of the allegedly invalidating prior art that is central to their request for reexamination long before they actually submitted the request to the PTO. The prior art cited in the reexamination request forms the basis of two

---

[6] The defendants also cite Snyder Seed Corp. v. Scrypton Systems, Inc., 52 U.S.P.Q.2d 1221 (W.D.N.Y. 1999). In that case, however, the court granted a stay because "[n]o discovery has been conducted. In fact, no scheduling order has been entered." Id. at 1224.

11

summary judgment motions filed with this court on September 24, 2004, and November 19, 2004. In fact, defendants Sensormatic and Vicon alleged in 2000 that this prior art anticipated the '088 Patent. (Pl.'s Resp., Ex. 4, 5 (Letters dated in 2000 from Vicon and Sensormatic respectively alleging that the VPS 1200 Instruction Manual and a brochure for the SensorVision System are prior art that invalidate the '088 Patent).) There is no reason that Vicon could not have requested a reexamination months or years earlier. Consequently, staying the case at this point in the litigation would permit Vicon to "abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." Softview, 56 U.S.P.Q.2d at 1635.

Not staying the case pending reexamination raises one additional issue: the possibility that this court and the PTO will render contradictory decisions. The Federal Circuit has held that inconsistency between the two forums is not a serious concern:

> The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. . . . Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different result between the two forums may be entirely reasonable.

Ethicon, 849 F.2d at 1428.

The easier course for the court would be to stay the action. That, however, would reward the Defendants' unexplained, and seemingly unexplainable, delay in filing the reexamination request.

12

As the court in <u>Enprotech Corp. v. Autotech Corp.</u>, 15 U.S.P.Q.2d 1319 (N.D. Ill. 1990) stated, "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route. The motion to stay is denied." <u>Id.</u> at 1320.

The Defendants have also requested an oral argument on the motion to stay. The law is clear: a decision to grant a stay is at the discretion of the trial court based on the facts before the court. The court's decision to deny the motion to stay is based largely on the fact that the Defendants have alleged for five years that the prior art cited in the reexamination request is invalidating, but waited until the close of fact discovery to request reexamination. This fact is uncontroverted. Letters between the parties in 2000 show that, from the moment a lawsuit was threatened, Vicon and Sensormatic alleged that this prior art could be used as a defense to Lectrolarm's infringement claims. Because the legal issues are clearly identified, and the key facts are uncontested, the court finds that holding an oral argument on the motion to stay would be unproductive.

## VI. Conclusion

For the foregoing reasons, defendant Vicon's motion to stay on behalf of all defendants is DENIED.

So ORDERED this **1st** day of September 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 437 in case 2:03-CV-02330 was distributed by fax, mail, or direct printing on September 7, 2005 to the parties listed.

---

Erik G. Swenson
MERCHANT & GOULD PC
80 S. Eighth St.
3200 IDS Center
Minneapolis, MN 55402

Sean W. Gallagher
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 W. Hubbard St.
Ste. 300
Chicago, IL 60610

DeAnna Allen
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

Michael J. Sweedler
DARBY & DARBY
805 Third Ave.
New York, NY 10022

John C. Snodgrass
Dickstein Shapiro Morin & Oshinsky LLP
2101 L. Street, N.W.
Washington, DC 20037

Dipu A. Doshi
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

James Edward Hanft
DARBY & DARBY
805 Third Ave.
New York, NY 10022

Steven J. Nachtwey
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 W. Hubbard St.
Ste. 300
Chicago, IL 60610

Douglas F. Halijan
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Kenneth Brothers
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

Robert E. Craddock
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Rachel C. Hughey
MERCHANT & GOULD PC
80 S. Eighth St.
3200 IDS Center
Minneapolis, MN 55402

Paul F. Ware
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109--288

Lee A Goldberg
DARBY & DARBY
805 Third Ave.
New York, NY 10022

John J. Mulrooney
CRONE & MASON, PLC
5100 Poplar Ave.
Ste. 3200
Memphis, TN 38137

Rebecca W. Bacon
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 W. Hubbard St.
Ste. 300
Chicago, IL 60610

Gianni Minutoli
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

Albert L. Underhill
MERCHANT & GOULD PC
80 S. Eighth St.
3200 IDS Center
Minneapolis, MN 55402

Gary M. Hoffman
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

David W. Whealan
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

Laurence E. Fisher
DICKSTEIN SHAPIRO MORIN & OSHINSKY
2101 L Street, N.W.
Washington, DC 20037--152

Alan E. Littmann
Bartlit Beck Herman Palenchar & Scott
Courthouse Place
54 West Hubbard Street
Suite 300
Chicago, IL 60610

John C. Englander
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109--288

Kemper B. Durand
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Rachael Lea Leventhal
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, DC 20037

J. Anthony Downs
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109--288

Mark I. Koffsky
GOODWIN PROCTER LLP
599 Lexington Ave.
New York, NY 10022

Douglas C. Doskocil
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109--288

Earle J. Schwarz
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT