```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
_____

LECTROLARM CUSTOM SERVICES,   )
INC.,                         )
                              )
     Plaintiff,               )
                              )
v.                            )   No. 03-2330 Ma/A
                              )
VICON INDUSTRIES, INC.,       )
et al.,                       )
                              )
     Defendants.              )
_____

      ORDER DENYING DEFENDANT VICON'S MOTION FOR PARTIAL SUMMARY
                            JUDGMENT
_____
```

Before the court is Defendant Vicon Industries, Inc.'s ("Vicon") motion for partial summary judgment of invalidity of patent claims 1 and 6, filed on November 19, 2004. Plaintiff Lectrolarm Custom Services, Inc. ("Lectrolarm") filed a response on January 14, 2005. For the following reasons, the court DENIES Defendant's motion for partial summary judgment.

**I. Background**

On May 12, 1989, a patent for a remote control apparatus for a rotating camera base was filed with the United States Patent and Trademark Office ("PTO"). The PTO issued U.S. Patent No. 4,974,088 (the "'088 patent") to inventor Takeshi Sasaki on November 27, 1990. The technology at issue is an apparatus that uses computer memory and digital communication to allow remote

1

control "rotation of a monitoring television camera in the horizontal and vertical directions." U.S. Patent No. 4,974,088, Column 1:6-8. The patent was originally assigned to Maruwa Electronic & Chemical Company ("Maruwa"). Maruwa assigned the patent to Lectrolarm. Lectrolarm alleges that the Defendants have infringed the '088 patent.[1]

**II. Standard for Summary Judgment of Invalidity**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing

---

[1] Originally there were 14 defendants; four remain.

the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

"A patent is presumed to be valid and this presumption only can be overcome by clear and convincing evidence to the contrary." Helifix Ltd. v. Blok-Lok Ltd., 208 F.3d 1339, 1346 (Fed. Cir. 2000)(internal citation omitted). Therefore, in addition to showing that there is no genuine issue of material fact, the movant must present clear and convincing evidence that the claims at issue are invalid to be entitled to summary judgment. See Helifix, 208 F.3d at 1346.

### III. Analysis

#### A. Prior Art

Vicon alleges that claims 1 and 6 of the '088 patent are invalid under 35 U.S.C. § 102(b) because those claims were

anticipated by products sold as part of the Vicon VPS1200 System[2] ("VPS1200 System") before May 12, 1988, and a system instruction manual for those products was published before May 12, 1988. Under the Patent Act, an inventor is not entitled to a patent if the invention was described in a printed publication or on sale in the United States more than one year before the date of the application for patent. 35 U.S.C. § 102(b). Because the application for the '088 patent was filed on May 12, 1989, the critical date for purposes of the on sale and printed publication bars is May 12, 1988. For the on sale and printed publication bars to apply, however, the court must first determine whether the alleged prior art and the invention described in the patent share a sufficient identity.

**B. Identity**

To invalidate a patent claim, the invention that allegedly anticipates the claim must "be something within the scope of the claim." Scaltech Inc. v. Retec/Tetra, L.L.C., 178 F.3d 1378, 1383 (Fed. Cir. 1999). To be within the scope of the claim, the invention must meet all of the limitations of the claim. Id. This court issued its "Memorandum Opinion and Order on Markman Motion and Order Denying Defendants' Motion for Summary Judgment of

---

[2] These products are a transmitter (V1200X-1P), a remote subsystem (V1200R-1), and pan-and-tilt drive units (V330APT, V3000APT). As to claim 1, the products also included a modem with a modulating circuit (V1200X-MARYLAND) and a demodulating circuit (V1200R-MA). As to claim 6, these products also included a fiber optic link (V282MFL).

Invalidity of Claims 6[3] and 7" ("Markman Order") on September 2, 2005, and all claims will be construed in accordance with the meanings provided in that order. The two claims that Vicon alleges are invalidated by the VPS1200 System provide as follows, with the elements of each claim that Lectrolarm contends the VPS1200 System does not meet underlined:

> 1. A remote control apparatus for a rotating camera base that supports a television camera such that it is rotatable in the horizontal and vertical directions, said remote control apparatus for a rotating camera comprising:
>
>> a first controlling means that outputs a digital signal for driving and controlling said rotating camera base,
>>
>> a modem for receiving and transmitting said digital signal outputted from said first controlling means for driving and controlling said rotating camera base, said modem including a modulating circuit and a demodulating circuit;
>>
>> a control box including said modulating circuit that outputs the modulated version of the digital signal from said first controlling means with a prescribed carrier wave, said modulating circuit being electrically connected to said first controlling means,
>>
>> said demodulating circuit that recovers the digital signal from the modulated input from said modulating circuit being provided in said rotating camera base and electrically connected to said modulating circuit, and
>>
>> <u>a second controlling means that drives and controls said rotating camera base based on the digital signal from said demodulating circuit, said second controlling means being electrically connected to said demodulating</u>

---

[3] The previous motion for summary judgment as to claim 6 was based on Defendants' contention that the term "photocoupler" was insolubly ambiguous. The motion was denied.

>       circuit of said modem.
>
>    . . . .
>
>    6. A remote control apparatus for a rotating camera base that supports a television camera such that it is rotatable in the horizontal and vertical directions, said remote control apparatus for a rotating camera base comprising:
>
>       a control box that outputs an electrical signal for driving and controlling said rotating camera base,
>
>       a photocoupler including a light-emitting element that transforms said electrical signal from said control box to a light signal, said light-emitting element being provided in said control box,
>
>       said photocoupler further including a light receiving element that transforms the light signal from said light-emitting element to an electrical signal and outputs the electrical signal to said rotating camera base, said light receiving element being provided in said rotating camera base,
>
>       a transmitting means for transmitting the light signal from said light-emitting element to said light-receiving element, said transmitting means being provided between said control box and said rotating camera base, and
>
>       <u>a controlling means that drives and controls said rotating camera base based on the signal from said light receiving element, said controlling means being provided in said rotating camera base and electrically connected to said light-receiving element.</u>

U.S. Patent No. 4,974,088 cols.10:10-37, 11:42-12:25 (filed May 12, 1989).

The parties agree that the contested elements are in the means-plus-function format. Under 35 U.S.C. § 112, ¶ 6, the elements of a claim can be expressed as a means for performing a

function, in which case the claim covers the corresponding structure described in the specification and equivalents thereof. Therefore, to invalidate a claim described in the means-plus-function format, a party must show both functional identity and either structural identity or equivalence. <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1267 (Fed. Cir. 1999). "Structural equivalence under § 112, ¶ 6 is met only if the differences are insubstantial; that is, if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." <u>Id.</u> "[T]he claim limitation is the overall structure corresponding to the claimed function," not its individual components. <u>Id.</u> at 1268. Structures not disclosed in the patent specification, however, cannot be the basis for establishing a genuine issue of material fact about the structural equivalence of the claimed prior art and the patent. <u>Lockwood v. American Airlines, Inc.</u>, 107 F.3d 1565, 1571 (Fed. Cir. 1997).

### C. Claims 1 and 6

In its <u>Markman</u> Order, the court defined the second controlling means in claim 1 and the controlling means in claim 6 as follows:

> A second controlling means. The function of the second controlling means is to position the rotating camera base in response to the digital signal received from the demodulating circuit. The structure of the second

> controlling means is the receiving side CPU along with the drive circuit and stepper motors in the camera base, and equivalents thereof. The second controlling means is electrically connected to the demodulating circuit.
>
> . . . .
>
> A controlling means. The function of the controlling means is to drive and control the rotating camera base based on the signal from the light-receiving element provided in that rotating camera base. The structure of the controlling means is the receiving side CPU along with the drive circuit and stepper motors in the camera base, and equivalents thereof. The controlling means is electrically connected to the light-receiving element provided in that rotating camera base.

(Markman Order 51, 55.) Vicon alleges that its VPS1200 System was identical in all respects to claims 1 and 6 of the '088 patent except that the Vicon system used AC motors rather than stepper motors, which it claims are substantial equivalents.

Lectrolarm contends, however, that AC motors are not equivalent to stepper motors because AC motors do not perform the claimed function in substantially the same way, as required under Odetics. The '088 patent states that one of the primary objects of the invention is to reduce the number of signal lines, or wires, needed to connect the camera base and the remote control apparatus, thus reducing the amount of noise in the system and allowing the camera base to operate less erratically over a farther distance, which was a problem in prior systems. U.S. Patent No. 4,974,088 col.1:52—58 (filed May 12, 1989).

According to Lectrolarm, the use of stepper motors rather than AC motors was a primary means for reducing the number of

signal lines. It is not clear from the evidence whether the system sold by Vicon before May 12, 1988, used more wires than the invention described in the '088 patent. (See Pshtissky Dep. 110:8-113:25.) Additionally, because the use of more or fewer wires is alleged to change the effective operation of a system, determining whether a system uses more or fewer wires relates to the overall functioning of the system and does not constitute an unnecessary focus on the individual components of the system's structure.

Therefore, the court finds that there is a genuine issue of material fact about whether the structure of the VPS1200 System, specifically its use of AC rather than stepper motors, is equivalent to the second controlling means described in claim 1 and the controlling means described in claim 6 of the '088 patent.  Because Vicon has not shown by clear and convincing evidence that there is no genuine issue of material fact about the invalidity of claims 1 and 6, Defendant's motion for partial summary judgment is denied.

**IV. Conclusion**

    Defendant Vicon's motion for partial summary judgment of invalidity of claims 1 and 6 is DENIED.

                      So ordered this 6th day of February 2006.

                      s/Samuel H. Mays, Jr.
                      SAMUEL H. MAYS, JR.
                      UNITED STATES DISTRICT JUDGE